**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.  08-CV-80636-KAM

FLORIDA HOMETOWN DEMOCRACY, INC.,
PAMELA WINCHESTER, BARBARA HERRIN,
SUSAN DUNN, JOHN DUNN, NANCY LEE,
JOSEPH FLORIO, JANET STANKO and JOYCE TARNOW,

       Plaintiffs,

vs.

KURT BROWNING, in his Official Capacity
as Florida Secretary of State,

       Defendant.
_____/

## DEFENDANT SECRETARY OF STATE'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT AND SUPPORTING MEMORANDUM OF LAW

Defendant, Kurt Browning, in his official capacity as Secretary of State of Florida, pursuant to Federal Rules of Civil Procedure 12(b)(3), 12(b)(6), 12(b)(7) and 12(e), files this Motion to Dismiss, or in the Alternative, Motion for More Definite Statement and Supporting Memorandum of Law.  In support of these Motions, Defendant states:

The Complaint must be dismissed for the following reasons:

1.     Failure to state a claim for relief against the Secretary; and

2.     Improper venue.

Alternatively, should the Complaint not be dismissed, the Court should enter an Order requiring the Plaintiffs to:

1.     File a more definite statement; and

2.     Join the relevant Supervisors of Elections as necessary parties to this action.

<u>**Summary of Defendant's Motions**</u>

Plaintiffs assert they are the sponsor of a citizen's initiative to amend the Florida Constitution, two of the sponsor's officers, and several Florida residents who support the proposed amendment.  The Complaint alleges that but for: (1) a February 1 filing deadline for initiatives that is expressly contained in the Florida Constitution and (2) an alleged failure to properly validate an undetermined number of petition signatures by unnamed Supervisors of Elections, the sponsor would have met the numerical and geographic distribution requirements for the initiative to have been placed on the November 2008 ballot.  The Complaint names the Florida Secretary of State as the sole Defendant.

The Complaint should be dismissed for each of the following reasons.

First, the Complaint must be dismissed because it fails to state a claim for relief against Defendant.  The Complaint contains no ultimate facts to support its claim that the February 1 filing deadline contained in the Florida Constitution is unconstitutional.  Further, the allegation that the sponsor would have obtained the required number of signatures but for the alleged improper invalidation of thousands of petition signatures by certain unnamed Supervisors of Elections does not state a cause of action against the Defendant.  The Complaint does not state a claim against the Secretary of State because the Secretary does not have the authority to count signatures that have not been verified by the Supervisors of Elections.  Fla. Stat. § 100.371(2).

Second, the Complaint must be dismissed, or in the alternative the case transferred to the Northern District of Florida, because of improper venue.  The Defendant in this case is a state official whose office is located in the state capital, Tallahassee.  The Complaint does not allege any actions or omissions by the Defendant specifically in the Southern District of Florida.  The Complaint should therefore be dismissed because it fails to allege sufficient facts to support venue in the Southern District of Florida.

For the above reasons, Defendant respectfully requests that the Court dismiss the Complaint. However, if the Court disagrees, Defendant alternatively moves the Court pursuant to Rule 12(e) to require the Plaintiffs to file a more definite statement, and pursuant to Rule 12(b)(7), to join the relevant Supervisors of Elections under Rule 19(a) as necessary parties to this action.

### Memorandum of Law

### I.   The Complaint Must be Dismissed Because It Fails to State a Claim for Relief.

The Complaint alleges that Defendant has violated various rights guaranteed them by United States Constitution by refusing to place the proposed Hometown Democracy constitutional initiative on the 2008 general election ballots. In paragraph 35 of the Complaint, Plaintiffs allege:

> 35.   By refusing to grant Hometown Democracy access to the ballot, and by enforcing the February 1 filing deadline and the erroneous and inconsistent signature validation standards described above, defendant is acting under color of state law to deprive plaintiffs of due process of law, equal protection of law, and speech, voting and associational rights secured by the First and Fourteenth amendments to the Constitution of the United States. Defendant is therefore liable to plaintiffs pursuant to 42 U.S.C. § 1983.

The Complaint fails to state a claim for relief against the Defendant for the following reasons.

### A.   The Complaint Fails to State a Claim Under 28 U.S.C. § 1983.

Plaintiffs do not allege any facts establishing that the Defendant has violated any of their federal constitutional rights. There is no federal constitutional right to amend the Florida Constitution by initiative. Any right to amend the Florida Constitution is inherently a state right, not a federal right. Thus, the procedure and requirements for amending the Florida Constitution

that are contained in the state constitution and the implementing state statutes do not violate any federal right of the Plaintiffs.

The Supreme Court has stated: "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections…" Burdick v. Takushi, 504 U.S. 428, 434 (1992). "[A]s a practical matter, there must be substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." Storer v. Brown, 415 U.S. 724, 730 (1974). In particular, "States…have considerable leeway to protect the integrity and reliability of…election processes generally." Buckley v. American Constitutional Law, 525 U.S. 182, 191 (1999).

Principles of federalism also limit the power of federal courts to intervene in state elections. Shannon v. Jacobowitz, 394 F.3d 90 (2d Cir. 2005); Burton v. Georgia, 953 F.2d 1266, 1268 (11th Cir. 1992). In Shannon, the Second Circuit ruled that plaintiffs contesting a town election based on alleged voting machine malfunctions did not have a cognizable due process claim absent an allegation of intentional deprivation of the right to vote. The Shannon Court stated:

> The Constitution "leaves the conduct of state elections to the states," Gamza v. Aguirre, 619 F.2d 449, 453 (5th Cir. 1980), and the Supreme Court has "recognized that the States 'have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised.'" Evans, 398 U.S. at 422, 90 S.Ct. 1752 (quoting Lassiter v. Northampton Election Bd., 360 U.S. 45, 50, 79, S.Ct. 985, 3L.Ed.2d 1072 (1959)). Because the states traditionally have authority over their own elections and because the Constitution contemplates that authority, courts "have long recognized that not every state election dispute implicates federal constitutional rights." Burton, 953 F.2d at 1268. "Only in extraordinary circumstances will a challenge to a state [or local] election rise to the level of a constitutional deprivation." Curry v. Baker, 802 F.2d 1302, 1314 (11th Cir. 1986).

394 F.3d at 94.

At best, Plaintiffs allege that "some" Supervisors of Elections did not properly validate some petition signatures. "It is not every election irregularity, however, which will give rise to a constitutional claim and an action under section 1983." See <u>Bodine v. Elkhart County Election Bd.</u>, 788 F.2d 1270, 1271 (7th Cir. 1986). The <u>Bodine</u> court articulated the standard for when a Section 1983 claim may be brought in the election context:

> In what has become a widely accepted statement of the standard…section 1983 is implicated only when there is "willful conduct which undermines the organic process by which candidates are elected."

See <u>Id.</u> at 1271 (affirming summary judgment against plaintiff where plaintiff failed to allege willful conduct on part of election officials).

The Complaint does not allege any willful misconduct by Defendant. Thus, it does not state a due process claim against the Secretary of State. Additionally, while Plaintiffs allege their rights to equal protection have been violated, the Complaint does not allege ultimate facts in support of that claim. For example, the Complaint does not identify any group or groups who are allegedly being treated in a different or more favorable manner.

Regarding any alleged violation of Plaintiffs' First Amendment rights, in <u>Biddulph v. Mortham</u>, 89 F.3d 1491, 1500 (11th Circuit 1996), the Eleventh Circuit ruled that "[m]ost restrictions a state might impose on its initiative process would not implicate First Amendment concerns." In <u>Biddulph</u>, the Eleventh Circuit affirmed the dismissal of a complaint alleging that Florida's initiative process violated the plaintiffs' First and Fourteenth Amendment rights. The Court ruled that the allegations of the complaint failed to state a valid federal constitutional claim. Similarly, the Complaint in this case fails to allege a valid federal constitutional claim.

Moreover, any "rights" the Plaintiffs may have to amend the Florida Constitution by initiative are subject to compliance with the state constitutional requirements for initiatives. In

Gibson v. Firestone, 741 F.2d 1268 (11th Cir. 1984), the Eleventh Circuit ruled that a district court did not abuse its discretion in refusing to enjoin the Florida Secretary of State from complying with the Florida Supreme Court's mandate to remove from a ballot a proposed constitutional amendment that the Florida Supreme Court found violative of State Constitution. In its decision, the Eleventh Circuit Court stated:

> The rights alleged by appellants…derive from wholly state-created procedures by which issues that might otherwise be considered by elected representatives may be put to the voting populace.  The state, having created such a procedure, retains the authority to interpret its scope and availability.  <u>Clearly, appellants can claim no constitutionally-protected right to place issues before the Florida electorate; any opportunity to do so must be subject to compliance with state constitutional requirements</u>.

741 F.2d at 1273 (Emphasis added.)

In the Complaint, Plaintiffs ask this Court to enter "a declaration that the February 1 filing deadline for citizen initiative petition signatures is unconstitutional."  Complaint ¶ 26(b). However, the Complaint does not allege any ultimate facts or legal basis for such a declaration. Plaintiffs do not have any federal constitutional right to have their proposed initiative placed on the ballot, or to have the deadline for submitting the required number of petitions fall on any particular date.

Until November 2004, the deadline for filing a proposed constitutional amendment initiative was 90 days before the election at which the measure was to be considered by the voters.  However, as the Plaintiffs accurately allege in paragraph 16 of their Complaint, "[a]t the November 2004 general election a constitutional amendment, initiated by joint legislative resolution, was approved and thus enacted which changed the filing deadline for a proposed

amendment motivated by a citizens' initiative to February 1 of the year of the general election at which the amendment is to be considered."[1]

The state constitutional amendment approved by Florida voters in November 2004 revised Article XI, Section 5(b) to read:

> (b) A proposed amendment or revision of this constitution, or any part of it, by initiative shall be submitted to the electors at the general election provided the initiative petition is filed with the custodian of state records <u>no later than February 1 of the year in which the general election is held</u>.  (Emphasis added.)

The Plaintiffs do not have a federal constitutional right to amend the Florida Constitution by initiative.  That right is a state constitutional right subject to the deadlines contained in the state constitution.  Accordingly, Complaint does not state a claim against the Defendant under Section 1983.

**B.    <u>The Complaint Fails to State a Claim Against the Defendant for Alleged Improper Invalidation of Petition Signatures by Various Unidentified Supervisors of Elections.</u>**

The Complaint also alleges that the number of valid initiative signatures which the Division of Elections credited Hometown Democracy was understated based on a variety of alleged actions or inactions by certain unnamed and unidentified local Supervisors of Elections. These allegations fail to state a claim for relief against the Defendant.

Section 100.371, Florida Statutes, implements the constitutional requirements for placement of an initiative on a ballot and places the responsibility for verifying petition signatures on the Supervisors of Elections.  Subsection 100.371(3), Florida Statutes, provides in

---

[1] Plaintiff Florida Hometown Democracy, Inc., brought an action against the Florida Secretary of State challenging the constitutionality of this amendment.  This challenge was rejected by the First District Court of Appeal in <u>Florida Hometown Democracy, Inc. v. Cobb</u>, 953 So.2d 666 (Fla. 1st DCA 2007).

pertinent part: "The supervisor shall promptly verify the signatures within 30 days of receipt of the petition forms and payment of the fee required by § 99.097."

In paragraph 24 of the Complaint, Plaintiffs make reference to the following paragraph contained in a memorandum dated December 31, 2007, that was sent to the Supervisors of Elections:

> Second, today, December 31, is the deadline for petitioning groups to submit petitions to you to ensure the petitions are verified and included in the February 1st certification. Although petitions may, and will, be submitted to you after today, please make every effort to verify them and have them included in the February 1st certification.

As Section 100.371(3), Florida Statutes, states that Supervisors of Elections "shall promptly verify the signatures within 30 days of receipt of the petition forms and payment of the required fee," the December 31 date referenced in the memorandum simply reflects that 30-day period. However, the memorandum makes it clear that the Supervisors of Elections should nonetheless make every effort to verify petition signatures that were submitted to them after December 31.

In paragraph 30 of the Complaint, Plaintiffs allege that various petition validation errors and inconsistencies by the Supervisors of Elections "were compounded by the fact that county voter databases, into which all petition signatures are logged by the Supervisors of Elections, do not conform to the statewide voter database." Plaintiffs neglect to mention the promulgation by the Defendant of Emergency Rule 1SER08-01, Florida Administrative Code.[2] This Emergency Rule, which became effective January 14, 2008, authorized the Division of Elections to make the determination as to whether the requisite number of petition signatures had been obtained based on the number of signatures that had been verified and reported to the Division of Elections by the Supervisors of Elections rather than based on the statewide voter registration system. See

---

[2] For ease of reference, a copy of this Rule is attached as Exhibit "A."

Exhibit "A", p. 1.  The statement of specific reasons for the Emergency Rule explained that the Secretary's staff had identified problems in the number of signatures being verified in the statewide voter registration system, such as local petition numbers being matched to state petition numbers incorrectly, and an inability to correctly distinguish between signatures recorded before January 2007 and those recorded after that date.  Id.  Because of these concerns, the Secretary believed paper certifications from the county supervisors reflected the most accurate accounting of verified signatures and, pursuant to the emergency rule, relied on those paper certifications (and *not* the statewide voter registration system) for his determination of which initiative petitions had met the constitutionally required number of signatures by February 1, 2008.  Id.  Therefore, Plaintiffs' allegations regarding problems with the statewide voter database fail to support any claim against the Secretary with respect to the Secretary's determination that Plaintiffs' proposed amendment achieved insufficient signatures to be placed on the 2008 ballot.

The Complaint also alleges that an unknown number of petition revocations were "double counted" because signature totals were improperly reported to the Department of State by Supervisors of Elections.  Plaintiffs further claim that this issue was "acknowledged" by the Department in a memorandum dated March 19, 2008.  See Complaint ¶ 27 and Exhibit C.  This claim does not state a cause of action against Defendant.  At most, it demonstrates that Plaintiffs' true issue is with the Supervisors rather than Defendant.  Moreover, the Department's March 19 memorandum did not confirm or acknowledge problems with the verification process.  Instead, the memorandum on its face states that it responds to a letter sent to the Supervisors of Elections by Plaintiff Hometown Democracy that alleged errors in the verification process.  The Department's memorandum simply clarified and reiterated for the Supervisors of Elections the

proper process to be used for signature verification and reporting, by noting that Supervisors of Elections should not deduct revocations from the total number of verified petitions.

Plaintiffs' allegations regarding the Supervisors of Elections simply do not state a cause of action against the Secretary of State.  The duties of the Defendant are specified in Subsection 100.371(4), Florida Statutes.  Under this statute, the Defendant does not have the authority to count signatures that have not been verified by a Supervisor of Elections.[3]

For the above reasons, the Complaint fails to state a claim for relief against the Defendant.

II.     **The Complaint Must Be Dismissed, or Alternatively the Case Transferred, Because of Improper Venue.**

Plaintiffs have filed this lawsuit in the Southern District of Florida despite the lack of any apparent connection to this District.  The sole defendant, Florida's Secretary of State, resides in Tallahassee in the Northern District of Florida.  Tallahassee is also the location of the headquarters of the Department of State.  The Complaint fails to identify any "events or omissions" taken by Defendant in the Southern District.  Consequently, the Complaint fails to allege sufficient facts supporting venue in this District under 28 U.S.C. § 1391(b) and should be dismissed.  In the alternative, this Court should enter an order transferring the case to the Northern District of Florida.

Under 28 U.S.C. § 1391(b), a civil action not founded upon diversity of citizenship may be brought only in: (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is

---

[3] Because initiative signatures are valid for four years, Plaintiffs can work toward placing their initiative on the 2010 ballot.  § 100.371(3), Fla. Stat.

situated; or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.  This statute does not provide a basis for venue in this District.

**A.      Defendant Resides in the Northern District of Florida.**

Under 28 U.S.C. § 1391(b)(1), a civil action may be brought in the judicial district where the defendant resides.  The sole defendant in this case resides in Tallahassee, Florida, in the Northern District.  Venue cannot be established under this provision.

The residence of a state official being sued in his or her official capacity is well recognized as the city where that official performs his or her statutory duties.  Northern Kentucky Welfare Rights Ass'n v. Wilkinson, 1991 WL 86267, 3 (6th Cir. 1991).  Furthermore, the Sixth Circuit in Wilkinson stated "that 28 U.S.C. § 1391(b) required that venue be in the district containing the state capital whenever state officials were sued in their official capacities." Id.

The Florida Department of State is headquartered in Tallahassee, Florida, in the Northern District.  "The…State of Florida, Department of State, is a department of the executive branch of the state government, which …[has] its official residence at the seat of government in Tallahassee in Leon County."  Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. State, 295 So.2d 314, 317 (Fla. 1st DCA 1974).  The Defendant's legal residence is therefore located in the Northern District and venue is improper under 28 U.S.C. § 1391(b)(1).

**B.      The Complaint Does Not Allege that Any "Events or Omissions Giving Rise to the Claim" Took Place in the Southern District.**

Venue may also be established in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  The event giving rise to the claims

asserted by the Plaintiffs against the Defendant, pertaining to the official certification of petition signatures received by Supervisors of Elections, occurred in the Northern District of Florida. Plaintiffs have not alleged that the Southern District of Florida was the location of any acts, events, or omissions by Defendant.  Venue is therefore improper in this District under 28 U.S.C. § 1391(b)(2).

The Southern District would be a proper venue only if a substantial part of the events or omissions giving rise to the claim occurred there. 28 U.S.C. § 1391(b)(2).  As the United States Supreme Court noted in Leroy v. Great Western United Corp., 443 U.S. 173, 184 (1979), "it is absolutely clear that Congress did not intend [by enacting § 1391(b)] to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts."  The Leroy Court rejected the reasoning that the claim arose in the district where the impacts or effects of a challenged statute were felt.  Id. at 185-186.  Therefore, the mere effects of the challenged act do not constitute a significant part of the events giving rise to the Plaintiffs' claim, and venue is improper in the Southern District.

The 'substantial part' language appearing in § 1391(b)(2) and in § 1391(e)(2) has "been interpreted as requiring a court to focus on the actions of the defendant, not of the plaintiff."  A.J. Taft Coal Co., Inc. v. Barnhart, 291 F. Supp. 2d 1290, 1308 (N.D. Ala. 2003).  The identical language of these two provisions suggests a congressional intent that they be interpreted similarly.  The U.S. District Court for the Middle District of Florida has cited Leroy for the following proposition:

> [I]t is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts ... [A] plaintiff may choose between [the districts] that with approximately equal plausibility-in terms of the availability of witnesses, the accessibility of other relevant evidence, and

the convenience of the defendant (but *not* of the plaintiff) – may be assigned as the focus of the claim. (citations omitted).

Cone Construction Corp. v. Florida Dept. of Trans., 744 F. Supp. 269, 271 (M.D. Fla. 1990).

Closely tracing the reasoning in Leroy, the Cone Court came to its ultimate determination by considering the following factors:

> The rules and regulations which are contested were enacted and implemented in the Northern District of Florida. Evidence concerning the factual basis for the promulgation of such rules and regulations are most likely to be found in that district, including those individuals, and potential witnesses, who are responsible for the drafting and adoption of such rules and regulations.

Id.

As in Cone, the actions challenged by Plaintiffs occurred in the Northern District of Florida, and evidence concerning the factual basis for them is found in that District. This evidence would be expected to include those individuals, documents, and potential witnesses involved with the Defendant's certification of petition signatures. These facts establish that venue is improper in the Southern District, but proper in the Northern District.

The Complaint does not identify any "events or omissions" by the Defendant in the Southern District of Florida. Rather, each act by Defendant and his personnel at the Department of State occurred in the Northern District. Complaint ¶ 5 ("defendant's refusal to grant [plaintiffs] access to the ballot, together with the filing deadline and other restrictions on ballot access imposed by defendant…"); Complaint ¶ 24 (acting Director of Division of Elections sets deadline); Complaint ¶ 26 (Division of Elections' website announcement that Hometown collected 564,588 signatures); Complaint ¶ 31 (Division of Elections notice to Hometown); and Complaint ¶ 33 (Division of Elections totals). The rulings in Leroy and Cone stand for the proposition that the only proper venue for adjudication of the instant case is the Northern District

of Florida.  The Plaintiffs' selection of venue in the Southern District is improper and this case should be dismissed or transferred.

The Complaint also alleges that errors or omissions by "some" Supervisors of Elections led those supervisors to underreport valid signatures to the Department of State.  Complaint ¶ 27 (allegedly 'double-counted' revocations); Complaint ¶ 28 (alleged understatement of total signatures collected); Complaint ¶ 30 (allegedly inconsistent standards used by Supervisors of Elections).  Plaintiffs do not claim that any of the supervisors at issue are located in the Southern District, nor do they explain why the actions of these unnamed Supervisors of Elections, who are independent constitutional officers, should be imputed to Defendant.

In short, the Complaint fails to allege that any of the events or omissions giving rise to Plaintiffs' claim against Defendant occurred in the Southern District of Florida.  Venue is therefore improper under 28 U.S.C. § 1391(b)(2) and the Complaint should be dismissed or transferred to the Northern District.

**C.**      **Venue Would be Proper in the Northern District of Florida.**

When there is no other judicial district in which an action may be brought, venue may be established in any district in which a defendant is found.  28 U.S.C. § 1391(b)(3).  To the extent Plaintiffs have claims against Florida's Secretary of State for actions taken in his official capacity, venue would be appropriate in the Northern District of Florida.  The Southern District is therefore an improper venue under 28 U.S.C. § 1391(b)(3) and the Complaint must be dismissed or transferred to the Northern District.

III.    **Alternatively, this Court Should Order Plaintiffs to Provide a More Definite Statement of their Claims against Defendant.**

As an alternative to its Motion to Dismiss, Defendant moves pursuant to Rule 12(e) for a more definite statement because the Complaint is so vague and ambiguous that the Defendant cannot reasonably respond.

The Plaintiffs' single-count Complaint broadly alleges that an unstated number of petition signatures submitted on behalf of Hometown Democracy were not properly validated by "some" of Florida's sixty-seven Supervisors of Elections due to errors or omissions by those supervisors.  Plaintiffs then ask this Court to declare unconstitutional: (1) the alleged application of "inconsistent signature review standards" by the (non-party) Supervisors of Elections; (2) a filing deadline contained in the Florida Constitution; and (3) Defendant's enforcement of the constitutional filing deadline, which Plaintiffs claim has allegedly deprived them of rights guaranteed under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs have also requested injunctive relief and a declaration that Defendant has violated 42 U.S.C. § 1983.

"Confusing complaints impose an unfair burden on litigants and judges."  McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996).  The Federal Rules of Civil Procedure therefore require pleadings to contain a "short and plain statement of the claim" showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  The allegations of a claim must be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).

The Eleventh Circuit has repeatedly condemned "shotgun complaints" in which numerous factual allegations are combined such that "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  Anderson v. District Board

of Trustees of Central Florida Community College, 77 F.3d 364, 366 (11th Cir. 1996).  See also Lumley v. City of Dade City, 327 F.3d 1186, 1192 n.13 (11th Cir. 2003) (noting that court has "repeatedly condemned" shotgun pleadings); Magluta v. Samples, 256 F.3d 1282, 1283 (11th Cir. 2001) (observing that shotgun pleadings in the Eleventh Circuit have been "condemned repeatedly, beginning at least as early as 1991").

A defendant faced with a shotgun complaint "is not expected to frame a responsive pleading." Anderson, 77 F.3d at 366.  Rather, the appropriate response is a motion under Rule 12(e) for a more definite statement.  Id.  A properly drafted complaint will not only allow the defendant to discern what the plaintiff is claiming and frame a responsive pleading, but will relieve the trial judge of "the cumbersome task of sifting through myriad claims, many of which [may be] foreclosed by [various] defenses."  Id. (quoting Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984)).

If the Court declines to dismiss the Complaint on the grounds argued in Sections I and II of this Motion, Defendant requests that this Court require Plaintiffs to provide a more definite statement of their claims against Defendant.  Plaintiffs have broadly alleged that "some" Supervisors of Elections failed to validate "some" petition signatures on various grounds. Complaint ¶ 27-28.  Defendant cannot reasonably prepare a responsive pleading to such vague and ambiguous allegation so to the extent that Plaintiffs seek to impute to Defendant any actions of the Supervisors of Elections, Plaintiffs should be required to articulate the grounds for such imputation and identify the supervisors whose actions are at issue.

Plaintiffs should also be required to provide a more definite statement of their Section 1983 claim against Defendant.  The Complaint alleges in conclusory fashion that Defendant's actions have deprived them of "due process of law, equal protection of law, and speech, voting

and associational rights secured by the First and Fourteenth Amendments" to the federal Constitution.   Complaint ¶ 35.   Yet the factual allegations in the Complaint relate overwhelmingly to conduct by unnamed Supervisors of Elections.  If this Court should conclude that the Complaint states a cause of action against Defendant, it should require Plaintiffs to identify and state clearly the specific facts and conduct by Defendant supporting Plaintiffs' claims against Defendant.

## IV.   **Alternatively, this Court Should Join the Relevant Supervisors of Elections as Necessary Parties to This Action.**

In addition to the alternate motion for more definite statement if the Complaint is not dismissed, Defendant moves, pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, for joinder of the applicable Supervisors of Elections as necessary parties to this action.

In the Complaint, Plaintiffs allege that certain unidentified Supervisors of Elections have refused to validate petitions which were alleged to be timely filed; misplaced certain petitions; invalidated petitions due to "illegal form;" and invalidated petitions because the signers were "purged," "invalid," "inactive," or "illegal."  Plaintiffs claim entitlement to the pleaded relief due to these alleged actions by unnamed Supervisors of Elections.   However, Plaintiffs have neglected to join as party defendants to this action any of the allegedly offending Supervisor of Elections.

Rule 19(a) of the Federal Rules of Civil Procedure ("Rule 19") addresses the persons required to be joined to an action if feasible.  The Rule states that a person who is subject to service of process and whose joinder will not deprive the Court of subject matter jurisdiction must be joined as a party if:

(A)     In that person's absence, the <u>Court cannot accord complete relief among the existing parties</u>; or

(B)     That person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:  (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) <u>leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.</u>

Fed. R. Civ. P. 19(a) (emphasis added).  Section (a)(2) of the Rule states that "[i]f a person has not been joined as required, the court must order that the person be made a party."  <u>Id.</u>

Under Rule 19, an absent party is a necessary party to pending litigation when "the Court cannot accord complete relief among the existing parties."  Fed. R. Civ. P. 19(a).  As stated above, the Defendant's statutory authority pertaining to ballot initiatives and signature counting is to "determine from the signatures verified by the Supervisors of Elections the total number of verified valid signatures and the distribution of such signatures."  § 100.371 (4), Fla. Stat.  It is only "upon the determination that the requisite number and distribution of valid signatures have been obtained," that the Defendant is permitted to "issue a certificate of ballot position."  <u>Id.</u>  The statutory authority rests with the appropriate "supervisor of elections for verification as to the number of registered electors whose valid signatures appear thereon."  § 100.371 (3), Fla. Stat.

Defendant is unable to provide Plaintiffs the relief requested, as Defendant does not have the statutory authority to count the signatures not verified by the Supervisors of Elections.  Since the authority to count the petition signatures is vested solely with the Supervisors of Elections, and it is the counting of signatures that is needed for Plaintiffs to obtain the ballot position they request in paragraph 36 of the Complaint, the applicable Supervisors of Elections are needed for the Court to provide the relief Plaintiffs seek in the Complaint.  Therefore, pursuant to Rule 19, the Supervisors of Elections are necessary parties to this case.

For these reasons, the unnamed and unidentified county Supervisors of Elections are necessary parties to this matter.  Section (a)(2) of Rule 19 provides this Court the authority to join all persons that are necessary but unnamed.  Therefore, if the action is not dismissed, these Supervisors of Elections should be joined as parties pursuant to Rule 19 of the Federal Rules of Civil Procedure.

## Conclusion

This Court should dismiss the Complaint for failure to state a cause of action against Defendant and improper venue.  If the Complaint is not dismissed, however, the Court should order Plaintiffs to provide a more definite statement of their claims against Defendant and should, pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, join the applicable Supervisors of Elections as necessary parties to this action.

## Certificate of Compliance with Local Rule 7.1(A)(3)

Pursuant to Rule 7.1(A)(3) of the Local Rules of the Southern District of Florida, counsel for the Defendant hereby certify that they conferred by telephone with counsel for the Plaintiffs regarding the motions for improper venue, for filing a more definite statement, and for joining necessary parties to this action in a good faith effort to resolve by agreement the issues raised in the motions.  Counsel were unable to resolve the issues raised by the motions.

Dated this 3rd day of July, 2008.

/s Stephen C. Emmanuel
RICHARD E. DORAN
RDoran@Ausley.com
Florida Bar No. 0325104
STEPHEN C. EMMANUEL
SEmmanuel@Ausley.com
Florida Bar No: 0379646
Ausley & McMullen
227 South Calhoun Street (32301)
Post Office Box 391
Tallahassee, Florida 32302
(850) 224-9115; Fax: (850) 222-7560

and

/s Lynn C. Hearn
LYNN C. HEARN
General Counsel
Florida Department of State
Florida Bar No. 0123633
LCHearn@dos.state.fl.us
Office of the General Counsel
R.A. Gray Building
500 South Bronough Street
Tallahassee, FL 32399-0250
(850) 245-6536; Fax: (850) 245-6127

Attorneys for the Defendant, Kurt S. Browning, Florida Secretary of State.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of July, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s Stephen C. Emmanuel_____
Attorney

**SERVICE LIST**

Gary Sinawski
GSinawski@aol.com
180 Montague Street 26th Floor
Brooklyn, NY 11201
Tele: (516) 971-7783
Fax: (212) 581-1352

Lesley Blackner
LBlackner@aol.com
Blackner, Stone & Associates
123 Australian Avenue
Palm Beach, FL 33480
Tele: (561) 659-5754
Fax: (561) 659-3184

Ross Stafford Burnaman
rossburnaman@earthlink.net
Florida Fish and Wildlife Conservation Commission
1018 Holland Drive
Tallahassee, FL 32301
Tele: (850) 942-1474

Attorneys for Plaintiffs
Florida Hometown Democracy, Inc.,
Pamela Winchester, Barbara Herrin,
Susan Dunn, John Dunn, Nancy Lee,
Joseph Florio, Janet Stanko and Joyce Tarnow

VIA CM/ECF